CHRISTIE *vs.* WHALEY.* †

1. If at a fair sale under execution, the purchaser buys, pays the the money and takes title, under an agreement with the defendant in execution that the latter may redeem, and there is no change of possession, and afterwards another judgment for another debt is rendered against the defendant, and whilst that judgment is outstanding the contract of redemption is executed in part, and by reason of such part execution, the purchaser, at the instance of the defendant, conveys a portion of the property to a third person by absolute deed, and there is still no change of possession, and none occurs up to the death of the defendant, a period of five years after the date of this deed, and of fourteen years after the sheriff's sale, that portion of the property embraced in such deed is *prima facie* subject to levy and sale under the junior judgment, as the property of the defendant.

---

*This case was argued at the last term, and by order of the court reargued at the present term.

†In this and the following cases of this term, no further opinion than the headnotes was filed.

2. A person who knows or believes that property is subject to an outstanding *fi. fa.* is not estopped from purchasing the *fi. fa.* and subjecting the land to its payment by reason of having previously to his purchase given his consent that the land be conveyed to the present claimant, it being doubtful whether the claimant was to take the deed as a volunteer or as a purchaser for value. Generally the purchaser of a *fi. fa.* has all the rights of the plaintiff from whom he purchased, and a claimant who seeks to cut down those rights by estoppel *in pais*, must prove clearly the matter of estoppel.

Judgment affirmed.

June 14, 1887.

Bleckley, Chief Justice.

[A *fi. fa.* in favor of Jones, ordinary, for use of Dunbar and wife, against Cherry, principal, and Whaley *et al.*, securities, based on a judgment rendered December 4, 1869, was levied on certain real estate, and D. K. Christie interposed a claim to a half interest therein. The *fi. fa.* had been transferred to J. C. Whaley, and was proceeding for his benefit.

The undisputed facts are as follows: Whaley, the father, was in possession of five lots and three half-lots of land, as far back as twenty years previous to his death; and continued so in possession until he died in 1883. A judgment was rendered against him in 1868, and in February, 1869, all these lands were sold under it and purchased by Kaigler, for $1,800; and the sheriff made him a deed. At the time of the sale it was agreed that Whaley might redeem the land. In December, 1869, a second judgment was rendered against Whaley, in favor of another creditor. In March, 1878, Kaigler conveyed ten acres of this land to Whaley the younger, and all of one lot except that ten acres, together with two of the half lots, to R. Christie; the consideration expressed in the former deed was $30, in the latter $500. At some time not stated, he also conveyed to Parrott, the brother of the elder Whaley's wife, a part of the original purchase, but how much does not appear. Parrott paid nothing, and held for

Mrs. Whaley, his sister.   In November, 1883, R. Christie
conveyed to his brother (the claimant) an undivided half
of the lot and of the two half-lots embraced in the deed
from Kaigler to R. Christie; the consideration expressed
in this deed is $10, and it is only a quit-claim title.   In
October, 1885, the *fi. fa.*, issued upon the second judgment
above mentioned, was assigned to Whaley the younger,
and shortly afterwards was levied on the lot and the two
half lots embraced in Kaigler's deed to R. Christie.   There-
upon a claim was interposed by Christie, the brother, to an
undivided half of the lands thus levied upon.

It is apparent that none of the land is put in controversy
by the litigation on this claim except an undivided half of
that which Kaigler conveyed to R. Christie; and that this
undivided half was conveyed by R. Christie to his brother,
the claimant, by quit-claim, the consideration expressed
being ten dollars.

The claimant's title depends upon (1) the sheriff's deed
to Kaigler; (2) Kaigler's deed to R. Christie; (3) R. Chris-
tie's deed to the claimant.   The right to sell the land un-
der the pending levy, depends upon its being bound by
the second judgment, notwithstanding the sheriff's sale
under the first judgment.

At this point dispute begins, and the first question
raised is, whether Kaigler purchased at the sheriff's sale
*bona fide* for himself, or whether that sale was fraudulent
and made to defeat the debt upon which the second judg-
ment was afterwards rendered.   Parrott testifies that the
object of the sale was to defeat that debt, but he does not
explain how he knows it, nor say who had this object in
view, or who had knowledge of it besides himself.   On
the other hand, there is no evidence that the land was
worth more than Kaigler bid for it, or that he did not pay
the whole amount of his bid, or that the judgment under
which it was sold was not an honest judgment founded on
an honest debt.   Kaigler testifies that he bought for him-
self and accounted to the plaintiff in the judgment (who

was his sister) for the purchase money. He admits that Whaley remained in possession just as before the sale, and never paid any rent. Coupled with the question of the *bona fides* of the sale, is the further question whether Whaley did not redeem in his lifetime, and thus again become the true owner, even if the sale was good and valid. It will be observed that some facts already stated, and some yet to be stated, bear on both these questions with more or less force. Kaigler testified that when he conveyed to R. Christie, Whaley still owed him a balance of $300 or $400. In reference to the deed from Kaigler to R. Christie, the testimony is not harmonious. According to Kaigler, Christie applied to him to purchase the land embraced in that deed; the price was fixed at $300, and the deed was made, neither Christie nor Whaley paying anything. Christie was to pay Kaigler as soon as he could, but gave no note or mortgage; no time was fixed for payment, the agreement being that Christie was to pay as soon as he could make the money out of the land, and at the time of trial he still owed for it. According to Christie, Whaley wanted to borrow of him $285, and offered to get Kaigler to make a deed to secure the loan with interest. Witness loaned the money to Whaley, and Kaigler made the deed. Witness neither paid nor agreed to pay Kaigler anything for the land. Witness got corn from Whaley on the loan for several years. the quantity not remembered, except 27 bushels at one time, worth 65 cents to $1 per bushel. Whaley the younger, transferee of the junior *fi. fa.*, testified that the money borrowed by Whaley, the father, from R. Christie, was paid to Kaigler, and thereupon Kaigler made the deed to Christie to secure him for the loan, and that the loan has not been repaid.

As to the deed from R. Christie to his brother, the claimant, the evidence of the former is, that these parties had an interest in Whaley's estate, and the latter wanted a part of this land and threatened that if witness did not give him half of it he would buy up the junior *fi. fa.*

against Whaley and sell the land. Under legal advice, witness thought it would be best to make him a quit-claim deed, which he did, in consequence of this threat. No money was paid. The deed was not made in consideration of any agreement by claimant to improve the land. Claimant cultivated a part of the land in 1885, and made several bales of cotton. The claimant, in his testimony, admitted that he did propose to buy up the *fi. fa.*, provided R. Christie did not claim the land; but stated that R. Christie told him the land was his, and that no one had any interest in it but himself; also, that he heard him tell another witness (who confirmed the statement in his testimony) that his money paid for the land, that it was his property, and that Whaley had no interest in it. He further testified that the land was without fences or houses, and unfit to cultivate; that R. Christie said if he, claimant, would fence the land, put the houses in order, and fit the place for cultivation, he would convey half of it to him; that he, claimant, agreed to this, and the deed was made; that he made the fence, repaired the houses, and put the place in order for cultivation, spending $275 in so doing. It appeared from testimony not disputed, that when the claimant was threatening R. Christie to buy up the junior *fi. fa.*, Whaley the younger, who afterwards bought it, said that owing to the tangled condition of the Whaley estate, Christie might make the deed to claimant, and they would settle the matter afterwards; also, that when the now pending levy was made, Whaley the younger agreed not to subject R. Christie's half of the property.

The jury found the property subject. The claimant moved for a new trial on the following among other grounds:

(1) Because the verdict was contrary to law and evidence.

(2) Because the court refused to charge as follows: "If you believe that J. C. Whaley, the transferee, advised R. Christie to make a deed to the land in controversy to claimant, then the land is not subject."

(3) Because the court erred after charging: "If claimant purchased the land for a valuable consideration from R. Christie and without notice of the agreement between Christie and J. D. Whaley, then the land would not be subject"; when claimant's counsel, immediately and in the presence of the jury, asked the court to charge "that if the jury believed from the evidence that R. Christie agreed to deed a half interest in the land to claimant, in consideration that he should fence and improve it, and if they should believe that the deed was so made, and that claimant performed his part, then that would be a valuable consideration":—the court refused to do so, but said that he could not intimate what the evidence was; and then said that a valuable consideration was something representing a money value.

NOTE BY THE COURT.—"The charge set out in the 3rd ground should be corrected by the general charge. After the verbal request set out in the 3rd ground, the court charged: 'It is not the province of the court to instruct what the evidence is, but a valuable consideration is something having a money value or representing a money value.'"

The motion was overruled, and the claimant excepted.]